1

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Ines Diaz Villafana (State Bar No. 354099)
Karen B. Valenzuela (State Bar No. 357231)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
       idiaz@bursor.com
       kvalenzuela@bursor.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSALIA NOGUEZ, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| | <u>JURY TRIAL DEMANDED</u> |
| PHARMAVITE LLC d/b/a NATURE MADE, | |
| Defendant. | |

1    Plaintiff Rosalia Noguez ("Plaintiff") brings this action on behalf of herself and all others

2    similarly situated against Pharmavite LLC d/b/a Nature Made ("Defendant" or "Nature Made").

3    Plaintiff makes the following allegations pursuant to the investigation of her counsel and based

4    upon information and belief, except as to the allegations pertaining to herself, which are based

5    upon personal knowledge.

6    <u>**NATURE OF THE ACTION**</u>

7    1.    This is a putative class action that Plaintiff brings on behalf of herself and all other

8    similarly situated consumers who purchased Defendant's Nature Made B12 Extra Strength

9    supplements (the "Products").[1]

10    2.    Defendant gives consumers the impression that the Products provide an "EXTRA

11    STRENGTH"[2] dose of vitamin B12 and charges consumers a price premium when they provide no

12    greater vitamin B12 availability or nutritional value than Defendant's lower-dosed and lower-

13    priced B12 supplements. *See* Figure 1.

14

15

16

17

18

19

20    _____

[1] The Products include but are not limited to Nature Made extra strength B12 supplements in all

21    varieties (examples include but are not limited to; 2500 mcg tablets, 2500 mcg softgels, 3000 mcg

22    tablets, 3000 mcg softgels, 3000 mcg tablets in cherry flavor). The Products also include Nature
Made maximum strength B12 supplements (5000 mcg) in all varieties. Plaintiff reserves the right
to amend her Complaint to include additional Nature Made products that are identified to fall

23    within the scope of this litigation.

[2] Plaintiff's allegations as to the "EXTRA STRENGTH" representations on Defendant's "EXTRA

24    STRENGTH" labeled Products throughout this complaint also apply to Defendant's "MAXIMUM
STRENGTH" Products. That is because consumers understand the "EXTRA STRENGTH" and

25    "MAXIMUM STRENGTH" representations in the same way — that these two types of Products
provide an especially high, nutritionally beneficial quantity of vitamin B12 and significantly more

26    B12 than other B12 products, such as Defendant's lower-dosed and lower-priced B12 products.
Further, just like the "EXTRA STRENGTH" Products, the "MAXIMUM STRENGTH" Products

27    also fail to provide significant greater nutritional value than their lower-dosed counterparts.
Therefore all allegations Plaintiff makes as to the "EXTRA STRENGTH" Products she also makes

28    as to the "MAXIMUM STRENGTH" Products.

_____

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                    1

1
2
3
4
5
6
7
8
9
10
11
12
13



***Figure 1***

14    3.    However, Defendant's claims are false because Defendant's Products are no

15  stronger and do not provide "extra strength" of B12 than its much lower-dosed and lower-priced

16  Products, *i.e.*, 500 mcg of B12.  Yet Defendant charges a price premium for its "EXTRA

17  STRENGTH" Products that provide no significant greater nutritional value than its lower-dosed

18  counterparts.  Defendant conceals from reasonable consumers that higher doses of B12 do not

19  mean increased bioavailability.  That is, consumers will likely not get any more B12 from

20  Defendant's "EXTRA STRENGTH" Products than they would from Defendant's lower-dosed B12

21  Products or other B12 alternatives, yet Defendant charges consumers more for the "EXTRA

22  STRENGTH" Products.  A reasonable consumer would reasonably believe Defendant is charging

23  more for Products that deliver more B12, however, that is not true.

24    4.    Thus, Defendant's representation that the Products have a special quality, that they

25  are "EXTRA STRENGTH," is false and misleading to reasonable consumers.

26    5.    Accordingly, Plaintiff brings claims against Defendant individually and on behalf of

27  a class of all other similarly situated consumers for (1) violation of California's Unfair Competition

28  Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*.; (2) violation of the Consumers Legal

1   Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq*.; (3) violation of California's False

2   Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*.; (4) Fraudulent Omission or

3   Concealment; (5) Fraudulent Misrepresentation; and (6) Negligent Misrepresentation.

4                                            **PARTIES**

5          6.      Plaintiff Noguez is a citizen of California residing in San Francisco, California.

6   Plaintiff purchased Defendant's Vitamin B12 Extra Strength 2500 mcg Tablets Product in May

7   2024 from Costco.

8          7.      Prior to purchasing the Product, Plaintiff reviewed the Product's packaging and

9   advertising and saw the Product label's representation that the Product is "EXTRA STRENGTH."

10  Plaintiff understood this statement as a representation and warranty to mean that the Product

11  provided an especially high, nutritionally beneficial quantity of vitamin B12 and significantly more

12  B12 than other B12 products, such as Defendant's lower-dosed and lower-priced B12 products

13  Plaintiff also relied on Defendant's omission of the material fact that a significantly higher dosage

14  of B12 does not translate to a significantly higher level of absorption.  She reasonably relied on

15  Defendant's representations and omissions when she purchased the Product.  Accordingly, these

16  representations and omissions were part of the basis of her bargain, in that Plaintiff Noguez would

17  have paid less for the Product or would not have purchased it at all had she known that the

18  "EXTRA STRENGTH" representations were false, and had Defendant disclosed that the Products

19  are not meaningfully "EXTRA STRENGTH."  Accordingly, Plaintiff was harmed by Defendant's

20  actions because she paid a price premium due to Defendant's false and misleading claim and

21  omission.

22         8.      Plaintiff suffered, and continues to suffer, economic injuries as a direct result of

23  Defendant's material misrepresentations, warranties, and omissions.  She remains interested in

24  purchasing Defendant's Products in the future but is unable to determine if the Products'

25  represented qualities are accurate.  If Defendant continues to represent its Products as "EXTRA

26  STRENGTH," then Plaintiff will be unable to make informed decisions about whether to purchase

27  Defendant's Products.  Plaintiff will also be unable to compare qualities and prices between

28  Defendant's Products and competitors' products.  She will likely be repeatedly misled by

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                    3

1   Defendant's conduct unless Defendant is compelled to ensure that its Products are marketed and

2   labeled accurately.

3       9.      Defendant Pharmavite LLC d/b/a Nature Made is a Limited Liability Company

4   organized under the laws of California with its principal place of business in Los Angeles,

5   California.  Defendant advertises, markets, manufactures, distributes, and sells its Products

6   throughout California and the United States.  At all relevant times, Defendant has advertised,

7   marketed, manufactured, distributed, and/or sold the Products to consumers in and throughout

8   California and the United States.

9                           **JURISDICTION AND VENUE**

10      10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as

11  amended by the Class Action Fairness Act of 2005 ("CAFA"), because this case is a class action

12  where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00,

13  exclusive of interest and costs, there are over 100 members of the putative class, and most

14  members of the proposed class are citizens of different states than Defendant.

15      11.     This Court has general jurisdiction over Defendant because Defendant is registered

16  in California and has its principal place of business in California, meaning Defendant is "at home"

17  in California.

18      12.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because

19  Defendant does substantial business in this District and a substantial part of the events giving rise

20  to Plaintiff's claims took place within this District.

21                          **FACTUAL ALLEGATIONS**

22  **A.      Vitamin B12**

23      13.     Vitamin B12 is a nutrient that helps keep the body's blood and nerve cells healthy

24  and helps the production of DNA.[3]  Vitamin B12 is a water-soluble vitamin naturally present in

25

26

27  ---
[3] National Institute of Health Office of Dietary Supplements, *Vitamin B12 Fact Sheet for Consumers* (updated Dec. 15, 2023), *available at* https://ods.od.nih.gov/factsheets/VitaminB12-Consumer/ (last accessed Apr. 17, 2025) ("NIH Vitamin B12 Fact Sheet for Consumers").

28

---

foods such as eggs, dairy, meat, and fish, and it is added to fortified grain products like cereals.[4]

14.    The United States National Academies of Sciences, Engineering, and Medicine recommends that adults get 2.4 micrograms (mcg) of vitamin B12 each day.[5]  An assumed absorption of 50% of B12 is included in the recommended intake — meaning that the 2.4 mcg recommendation assumes that only 50% of that quantity will be absorbed.[6]  In other words, although the daily recommended intake is 2.4 mcg, the body is assumed to only absorb half of that quantity, yet this is still considered to be sufficient B12 for the average adult.  Most American adults consume enough vitamin B12 from dietary sources, but older adults, people with pernicious anemia or gastrointestinal disorders, and vegans and vegetarians are at risk of vitamin B12 deficiency.[7]  Vitamin B12 deficiency is associated with megaloblastic anemia, a blood condition that makes people tired and weak.[8]

15.    For those who are B12 deficient, supplements are one option for increasing vitamin B12 in the body, although the Mayo Clinic advises consumers using vitamin B12 supplements that "[y]our body absorbs only as much as it needs, and any excess passes through your urine."[9] Doctors recommend reducing the dosage of vitamin B12 supplements once an individual's vitamin B12 level is back in the normal range.[10]

16.    The body can only absorb so much vitamin B12 due to concurrent biological processes.  The body produces intrinsic factor, a protein that binds to vitamin B12 to allow it to be

[4] Mount Sinai, "Vitamin B12," *available at* https://www.mountsinai.org/health-library/nutrition/vitamin-b12 (last accessed Apr. 17, 2025).

[5] NIH Vitamin B12 Fact Sheet for Health Professionals, *supra* note 7.

[6] *Dietary Reference Intakes for Thiamin, Riboflavin, Niacin, Vitamin B6, Folate, Vitamin B12, Pantothenic Acid, Biotin, and Choline*, NIH, (1998), (last accessed Apr. 17. 2025) https://www.ncbi.nlm.nih.gov/books/NBK114302/#:~:text=An%20assumed%20absorption%20of%2050%,day%20of%20vitamin%20B12.

[7]  NIH Vitamin B12 Fact Sheet for Health Professionals, *supra*.

[8] *Id.*

[9] Mayo Clinic, "Vitamin B-12" (June 28, 2024), *available at* https://www.mayoclinic.org/drugs-supplements-vitamin-b12/art-20363663 (last accessed Apr. 17, 2025).

[10] "Should you take a vitamin B12 supplement?" *Harvard Health Publishing: Harvard Medical School, available at* https://www.health.harvard.edu/staying-healthy/should-you-take-a-vitamin-b12-supplement (last accessed Apr. 17, 2025).

1  absorbed by the body.[11]  Only so much intrinsic factor is produced, and the amount of vitamin B12
2  that can be absorbed is limited by the availability of intrinsic factor.[12]  Even when intrinsic factor is
3  available, studies show that only about 50% of 1-2 mcg supplements that do not exceed the
4  intrinsic factor availability are absorbed, with diminishing marginal returns for supplementation at
5  a higher dose: "For example, absorption is only about 2% at doses of 500 mcg and 1.3% at doses of
6  1,000 mcg."[13]  This means that higher mcg doses of B12 do not translate to more B12 availability.
7  A limited amount of B12 beyond the recommended daily intake can accumulate in the body.[14]
8  Approximately 50% of the body's additional vitamin B12 storage is in the liver, but it is also stored
9  in muscle, bone marrow, and the gut.[15]

10        17.    The diminishing marginal returns of vitamin B12 absorption, coupled with the
11  limited accumulation of the vitamin mean that much of the vitamin B12 in a supplement is unused
12  and will exit the body through the urine.[16]

13        **B.    Defendant's Products**

14        18.    Defendant represents on its Products' label that its Products are "EXTRA
15  STRENGTH."  *See* Figure 1.

---

[11]Hashim M. Al-Awami et al., "Physiology, Gastric Intrinsic Factor" *StatPearls* (July 17, 2023), *available at* https://www.ncbi.nlm.nih.gov/books/NBK546655/#:~:text=The%20intrinsic%20factor%20(IF)%20is,Cbl)%20by%20the%20terminal%20ileum (last accessed Mar. 12, 2025).

[12] *See Vitamin B12*, NIH, https://ods.od.nih.gov/factsheets/VitaminB12-HealthProfessional/#:~:text=No%20evidence%20indicates%20that%20absorption,of%201%2C000%20mcg%20%5B25%5D.  ("The[] rates [of absorption] are about 50% at doses (less than 1-2 mcg) that do not exceed the cobalamin-binding capacity of intrinsic factor and are substantially lower at doses well above 1-2 mcg.  For example, absorption is only about 2% at doses of 500 mcg and 1.3% at doses of 1,000 mcg.")

[13] *See Id.*

[14] Suparna Rajan, Screening for an Treatment of Cobalamin Deficiency in Older Adults (2000) (Ph.D. dissertation, University of Washington) ("[T]he total body pool of Cbl [B12] ranges from 2.5 to 5 mg." p. 9-10)._

[15] *Id.*

[16] The Nutrition Source. "Vitamin B12," (last reviewed Mar. 2023) Harvard T.H. Chan School of Public Health, *available at* https://nutritionsource.hsph.harvard.edu/vitamin-b12/ (last accessed Apr. 17, 2025).

19.     Defendant's "EXTRA STRENGTH" representation leads reasonable consumers to believe that the Products provide an especially high, nutritionally beneficial quantity of vitamin B12 and significantly more B12 than other B12 products with lower doses.

20.     However, Defendant's representation is false and misleading given that the "EXTRA STRENGTH" Products do not provide higher availability of B12 to the body because, although the Products have a higher dosage of vitamin B12, the vast majority of the dosage cannot be absorbed by the body.  Defendant further makes material omissions of fact by not disclosing on its Products that the "EXTRA STRENGTH" Products do not provide especially high, nutritionally beneficial quantity of vitamin B12 compared to other B12 products with lower doses.  Yet, Defendant charges a price premium for its "EXTRA STRENGTH" B12 Products.

21.     For example, aside from the "EXTRA STRENGTH" Products Defendant sells, Defendant also sells "regular" B12 supplement products that come in 500 mcg doses.  Those 500 mcg dose products do not include any label claims such as "EXTRA STRENGTH" that would signal to a consumer that the product is especially formulated to deliver more B12.  And notably, Defendant prices the Products with the "EXTRA STRENGTH" label claims at a higher rate than the 500 mcg products without such claims.  Defendant's Vitamin B12 500 mcg supplement is $10.69, its Vitamin B12 "Extra Strength" 2,500 mcg supplement is $13.59, its Vitamin B12 "Extra Strength" 3,000 mcg supplement is $18.39, and its Vitamin B12 "Maximum Strength" 5,000 mcg supplement is $21.99.[17]  Accordingly, Defendant's pricing scheme shows that Defendant will increase the price of the B12 supplement in the products that are labelled "EXTRA STRENGTH," which are also the products with higher doses of B12.

22.     Because the Products are represented as "EXTRA STRENGTH" yet do not actually supply the purported "EXTRA STRENGTH" dosage of vitamin B12 than Defendant's lower-dosed and lower-priced products, the "EXTRA STRENGTH" Products are no different than the "regular"

---

[17] Nature Made, "B Vitamins Supplements," *available at* https://www.naturemade.com/collections/b-vitamins?sort_by=manual (last accessed Apr. 17, 2025).

1    strength products Defendant sells at lower prices.  Therefore, Plaintiff and the Class have overpaid

2    for Defendant's Products for qualities the Products do not have.

3    **C.    Defendant's Misrepresentations and Omissions are Actionable**

4    23.    Defendant makes a misrepresentation of fact on its Products' label by claiming its

5    Products are "EXTRA STRENGTH" and charging a price premium based on this claim.

6    24.    Defendant also omits a material fact to consumers—that higher mcg doses of B12

7    do not mean more availability of B12.[18]

8    25.    As the primary manufacturer, advertiser, and wholesaler of the Products, Defendant

9    knew or should have known that the Products' labeling was deceptive in that, although the

10   Products state they are "EXTRA STRENGTH" and include higher doses of B12 as compared to

11   Defendant's "regular" dosed B12 products, the Products do not provide higher availability of B12

12   to the body because, although the Products have a higher dosage of vitamin B12, the vast majority

13   of the dosage cannot be absorbed by the body.  In fact, Defendant knew or should have known that

14   these Products are virtually identical to their lower-priced and lower-dosage counterparts for their

15   bioavailability.

16   26.    An example of Defendant's knowledge is that Defendant sells other supplements

17   that purport to provide the "nutrients your body needs" which contain just 6 mcg of vitamin B12.[19]

18   27.    As such, Plaintiff and Class Members saw and relied on Defendant's representations

19   and omissions and reasonably understood these representations and warranties to mean that the

20   Products actually were "EXTRA STRENGTH," as compared to lower-dosed and lower-priced

21   alternatives.  Plaintiff and Class Members would have paid substantially less for the Products or

22   would not have purchased the Products at all had they known that the Products are not actually

23

24   [18] *See Vitamin B12*, NIH, https://ods.od.nih.gov/factsheets/VitaminB12-
     HealthProfessional/#:~:text=No%20evidence%20indicates%20that%20absorption,of%201%2C000
     %20mcg%20%5B25%5D.  ("The[] rates [of absorption] are about 50% at doses (less than 1-2

25   mcg) that do not exceed the cobalamin-binding capacity of intrinsic factor and are substantially
     lower at doses well above 1-2 mcg.  For example, absorption is only about 2% at doses of 500 mcg

26   and 1.3% at doses of 1,000 mcg.")

27   [19] Nature Made, "Multivitamin Tablets with Iron," *accessible at*
     https://www.naturemade.com/products/nature-made-multivitamin-tablets-with-

28   iron?variant=17610545365063 (last accessed Apr. 17, 2025).

"EXTRA STRENGTH". Therefore, Plaintiff and the Classes were injured by the price premium they paid for the Products, which they otherwise would not have paid absent Defendant's misrepresentations and omissions. Accordingly, Plaintiff and Class Members suffered economic injuries as a result of purchasing the Products.

28. Defendant also had a duty to disclose because of its exclusive and/or superior knowledge concerning the true nature of the Products as the Product manufacturer. Nonetheless, Defendant concealed and misrepresented this information in order to maximize its own profits.

29. Although Defendant is in the best position to know the true nature of its Products during the relevant timeframe, to the extent possible, Plaintiff satisfies the requirements of Rule 9(b) by alleging the following facts with particularity:

30. **WHO**: Defendant, Pharmavite LLC d/b/a Nature Made.

31. **WHAT**: Defendant's conduct here was, and continues to be, fraudulent and misleading because its Products' labeling leads consumers to believe they are getting more B12 for their money, when in fact they are not. Specifically, through Defendant's representation that the Products were "EXTRA STRENGTH," Defendant lead consumers, such as Plaintiff and Class Members, to believe that the Products' would provide them with greater availability of B12 or more nutritional value as compared to Defendant's "regular" dosed B12 products. However, Defendant's representations were false and misleading because the Products do not provide higher availability of B12 to the body, even though the Products have a higher dosage of vitamin B12, since the vast majority of the dosage cannot be absorbed by the body. Defendant further omitted and concealed that the Products are not actually "EXTRA STRENGTH," as they provide no greater nutritional value than their lower-dosed counterparts yet Defendant charges more for the Products. These representations and omissions were material to Plaintiff and the Classes because they would not have paid the same amount for the Products or would not have purchased the Products at all had they known the Products did not provide greater availability of vitamin B12 or greater nutritional value despite being labeled as "EXTRA STRENGTH." Defendant knew or should have known that this information is material in making a purchasing decision to reasonable consumers, including Plaintiff and Class Members, given its expertise and offering of Products, as

described above, yet it continued to pervasively market the Products in this manner in the United States.

32.    **WHEN**: Defendant made material misrepresentations and omissions to Plaintiff and Class Members during the putative class period, including prior to and at the time of Plaintiff's purchase despite its knowledge that the Products were not "EXTRA STRENGTH" — since they provide no greater B12 than its lower-dosed and lower-priced counterparts.  Plaintiff and Class Members viewed the packaging and advertising of the Products, including Defendant's representations and warranties about the Products being "EXTRA STRENGTH" at the time of purchase.

33.    **WHERE**: Defendant's marketing messages were uniform and pervasive throughout California and the United States, carried through material misrepresentations and omissions on the Products' labels, packaging, website, and to third-party retailers.

34.    **HOW**: Defendant made material misrepresentations and omissions of fact regarding the Products by representing and warranting that the Products are "EXTRA STRENGTH," when they provide no greater availability of vitamin B12 or nutritional value than its lower-dosed and lower-priced B12 products.  Defendant charges a price premium for its "EXTRA STRENGTH" Products and deceives consumers into believing they are nutritionally benefiting from more B12 for their money when buying the vitamins labeled "EXTRA STRENGTH", when they are not. Defendant, on its labeling and in its marketing, omitted material disclosures to consumers that higher mcg doses of B12 do not translate to more B12 availability.

35.    **INJURY**: Plaintiff and Class Members purchased, paid a premium (up to the full price), or otherwise paid more for the Products than they would have, or alternatively they would not have purchased the Products at all, absent Defendant's misrepresentations and omissions.

**CLASS ALLEGATIONS**

36.    Plaintiff brings this matter on behalf of herself and all similarly situated individuals, as defined in the following classes (collectively, the "Classes"):

37.    **Nationwide Class:** All natural persons in the United States who, within the applicable statute of limitations period, up to and including the date of final judgment in this action, purchased the Products (the "Nationwide Class").

38.    **California Subclass:** All natural persons in California who, within the applicable statute of limitations period, up to and including the date of final judgment in this action, purchased the Products (the "California Subclass").

39.    Excluded from the Classes are: (1) persons who made such purchases for the purpose of resale; (2) any judicial officer presiding over this action and any members of their families; (3) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parent has a controlling interest and their current or former employees, officers, and directors; and (4) Plaintiff's counsel and Defendant's counsel.

40.    As a result of additional information obtained through further investigation and discovery, the above-described Classes may be modified or narrowed as appropriate.

41.    ***Numerosity.***  Members of the Classes are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Classes number in the thousands.  The precise number of the Class Members and their identities are unknown to Plaintiff at this time but may be determined through discovery.

42.    ***Commonality and Predominance.***  Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members.  Common legal and factual questions include but are not limited to:

(a)    Whether Defendant warranted the Products as "EXTRA STRENGTH;"

(b)    Whether a reasonable consumer would understand Defendant's representations and warranties to mean that the Products provided more vitamin B12;

(c)    What a reasonable consumer understood the Products' label "EXTRA STRENGTH" to mean;

(d)    Whether the dosage of vitamin B12 is material to reasonable consumers; and

(e)    Whether Defendant breached its warranties and was unjustly enriched as a result.

43.     Common questions of law and fact specific to the California subclass (in addition to the questions for the nationwide class) include:

(a)     Whether Defendant's conduct violated the CLRA, FAL, and UCL.

44.     *Typicality.*  Plaintiff's claims are typical of the claims of the member of the Classes in that Plaintiff purchased Defendant's Products in reliance on the representations and warranties described above and suffered a financial loss as a result of not receiving the benefit of the bargain for her purchase.

45.     *Adequacy.*  Plaintiff is an adequate representative of the Classes because her interests do not conflict with the interests of the Classes she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously.  The interests of the Classes will be fairly and adequately protected by Plaintiff and her counsel.

46.     *Superiority*.  The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class Members.  Individually, Class Members may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense of all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of the case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issue will ensure that all claims and claimants are before this Court for consistent adjudication of liability issues.  Defendant has acted or failed to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Classes as a whole.

47.     Without a class action, Defendant will continue a course of action that will result in further damages to Plaintiff and members of the Class and will likely retain the benefits of its wrongdoing.

1
2
3

<u>COUNT I</u>
**Violations of California's False Advertising Law ("FAL")**
**Cal. Bus. & Prof. Code §§ 17500, *et seq.***
**(On Behalf of the California Subclass)**

4          48.    Plaintiff hereby incorporates by reference and re-alleges herein the allegations

5    contained in all preceding paragraphs of this Complaint.

6          49.    Plaintiff brings this claim individually and on behalf of the California Subclass

7    under California law.

8          50.    Defendant violated California's False Advertising Law ("FAL"), Cal. Bus. & Prof

9    Code §§ 17500, *et. seq.,* by publicly disseminating false, misleading, and/or unsubstantiated

10   advertisements regarding its Products, as alleged above and herein.

11         51.    Plaintiff has standing to pursue this claim because she suffered an injury-in-fact and

12   has lost money or property because of Defendant's false advertising.  Specifically, Plaintiff

13   purchased one of the Products for her own personal use.  In doing so, Plaintiff relied on

14   Defendant's false and misleading representations and omissions.  As such, Plaintiff spent money

15   on the transaction that she otherwise would not have spent had she known the truth about

16   Defendant's claims.

17         52.    Defendant disseminated false and misleading advertisements to increase the sales of

18   the Products.

19         53.    Defendant knew or should have known that the advertisements for its Products were

20   false and/or misleading.

21         54.    Defendant knew or should have known that consumers, including Plaintiff and other

22   members of the California Subclass, would believe that the Products, which Defendant labeled as

23   being "EXTRA STRENGTH," would provide them with greater availability or greater nutritional

24   benefit that other vitamin B12 products when, in fact, this is false because the Products provide no

25   greater nutritional value than Defendant's lower-dosed and lower-priced B12 products.

26         55.    Defendant's wrongful conduct is ongoing and part of a general practice that is still

27   being perpetuated and repeated throughout the State of California and nationwide.

28

56.    Plaintiff and the California Subclass Members have suffered harm as a result of Defendant's violations of the FAL because they paid monies for Products that they would not have purchased or would have paid significantly less but for Defendant's false and misleading advertisements.

57.    Accordingly, Plaintiff and members of the California Subclass seek an order of this Court that includes, but is not limited to, requiring Defendant to: (a) provide restitution to Plaintiff and other California Subclass Members; (b) disgorge all revenues obtained as a result of its violations of the FAL; and (c) pay attorneys' fees and costs for Plaintiff and the California Subclass.

<u>**COUNT II**</u>
**Violations of California's Consumer Legal Remedies Act ("CLRA")**
**Cal. Civ. Code §§ 1750, *et seq.***
**(On Behalf of the California Subclass)**

58.    Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this Complaint.

59.    Plaintiff brings this claim individually and on behalf of the Members of the California Subclass against Defendant.

60.    Plaintiff and other Members of the California Subclass are "consumers" within the meaning of Cal. Civ. Code § 1761(d).  By purchasing Defendant's Products, Plaintiff and the Members of the California Subclass engaged in "transactions" within the meaning of Cal. Civ. Code § 1761(e) and 1770.

61.    Defendant is a "person" within the meaning of Cal. Civ. Code § 1761(c). Defendant's Products are "goods" within the meaning of Cal. Civ. Code § 1761(a).

62.    Defendant's unfair and deceptive business practices, as alleged above and herein, were intended to and did result in the sale of the Products.

63.    Specifically, Defendant misled consumers to believe that the Products have the special quality of being "EXTRA STRENGTH," when in fact, they do not since they do not provide greater nutritional value or greater availability of vitamin B12 than its lower-dosed and lower-priced B12 products, *i.e.,* 500 mcg B12 supplements.  Defendant further mislead consumers

by omitting the material fact that its Products would not provide greater nutritional value or greater availability of vitamin B12, even though the Product's labeling lead consumers to believe this was the case. As such, through Defendant's misrepresentations and omissions, Defendant induced consumers to purchase the Products and pay a price premium for them.

64. As a direct and proximate result of Defendant's unfair and deceptive business practices, as alleged above and herein, Plaintiff and the California Subclass Members suffered injury and damages in an amount to be determined at trial.

65. Defendant violated California's Consumer Legal Remedies Act ("CLRA") by engaging in the following unfair and deceptive business practices as alleged above and herein:

    (a) Defendant violated Cal. Civ. Code § 1770(a)(5) by representing that the Products have characteristics they do not have;

    (b) Defendant violated Cal. Civ. Code § 1770(a)(7) by representing that the Products are of a particular standard and quality despite being of another;

    (c) Defendant violated Cal. Civ. Code § 1770(a)(9) by advertising the Products with the intent not to sell them as advertised.

66. The CLRA was enacted to protect consumers against such practices. The CLRA applies to Defendant's conduct because the statute covers all sales of goods to consumers.

67. On information and belief, Defendant's unfair and deceptive business practices, as alleged above and herein, were willful, wanton, and fraudulent.

68. Defendant's wrongful business practices constituted, and still constitute, a continuing course of conduct in violation of the CLRA.

69. On information and belief, Defendant's officers, directors, and/or managing agents authorized the use of misleading statements and material omissions regarding the Products' advertising as alleged herein.

70. On January 22, 2025, prior to the filing of this complaint, Plaintiff's counsel sent Defendant a CLRA notice letter, which complies in all respects with Cal. Civ. Code § 1782(a). The letter was sent via certified mail, return receipt requested, advising Defendant that it was in violation of the CLRA and demanding that it cease and desist from such violations and make full

restitution by refunding the monies received therefrom.  The letter stated that it was sent on behalf of Plaintiff and all other similarly situated purchasers.

71.    Plaintiff and California Subclass Members seek actual and punitive damages, restitution, reasonable costs and attorney's fees, and to enjoin the unlawful acts and practices described herein pursuant to Cal. Civ. Code § 1780.

**COUNT III**
**Violations of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code §§ 17200,** *et seq.*
**(On Behalf of the California Subclass)**

72.    Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this Complaint.

73.    Plaintiff brings this claim individually and on behalf of the Members of the California Subclass against Defendant.

74.    Defendant violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, by engaging in unfair, fraudulent, and unlawful business practices.

75.    Plaintiff has standing to pursue this claim because she suffered an injury-in-fact and lost money or property as a result of Defendant's unlawful, unfair, and fraudulent conduct. Specifically, Plaintiff purchased one of the Products for her own personal use.  In doing so, Plaintiff relied upon Defendant's representations that the Products were "EXTRA STRENGTH" Products, meaning that the Products would provide greater vitamin B12 availability or greater nutritional value than its lower-dosed and lower-priced B12 products, *i.e.,* 500 mcg B12 supplements.  Defendant further mislead consumers by omitting the material fact that its Products would not provide greater nutritional value or greater availability of vitamin B12, even though the Product's labeling lead consumers to believe this was the case.  As such, through Defendant's misrepresentations and omissions, Defendant induced consumers to purchase the Products and pay a price premium for them.  Plaintiff has suffered an injury because she spent money in the transaction that she otherwise would not have spent had she known the truth about Defendant's advertising claims.

///

1

***"Unfair" Prong of the UCL***

2          76.     A business act or practice is "unfair" under the UCL if it offends an established

3   public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to

4   consumers.  That unfairness is determined by weighing the reasons, justifications, and motives for

5   the business act or practice against the gravity of the harm alleged.

6          77.     Defendant's conduct constitutes an "unfair" business practice because, as alleged

7   herein, Defendant engaged, and continues to engage in, false, misleading, and deceptive

8   advertising campaigns that mislead consumers into believing that the Products they purchased

9   provide an "EXTRA STRENGTH" dose of vitamin B12, when in fact, they provide no greater

10  nutritional value than Defendant's lower-dosed and lower-priced B12 counterparts.

11         78.     Defendant's conduct, as alleged above and herein, was not motivated by any

12  legitimate business or economic need or rationale other than to maximize its revenue and the

13  expense to consumers.  No legitimate reasons, justifications, or motives outweigh the harm and

14  adverse impact of Defendant's conduct on members of the general consuming public.  Defendant

15  engaged, and continues to engage, in such conduct solely to wrongfully extract monies to which

16  Defendant is not entitled from reasonable consumers seeking to compare supplements based on the

17  available and represented information about their dosage and price.  Defendant could have, but has

18  not, used alternative means of effecting its legitimate business needs, such as by removing the

19  "EXTRA STRENGTH" claim or by disclosing that higher mcg doses of B12 do not translate to

20  more availability of vitamin B12 or more nutritional benefit of B12.

21         79.     Defendant's conduct harms consumers and hurts market competition.  Defendant's

22  conduct, as alleged herein, is immoral, unethical, oppressive, unscrupulous, unconscionable, and/or

23  substantially injurious to Plaintiff and Members of the California Subclass because it violates

24  consumers' reasonable expectations.  If Defendant had advertised its Products in a non-misleading

25  fashion, Plaintiff and other California Subclass Members could have considered other options for

26  purchasing vitamin B12 supplements.

27

28

***"Fraudulent" Prong of the UCL***

80.    A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

81.    Defendant has engaged in, and continues to engage, in, fraudulent business practices by representing to consumers that the Products provide an "EXTRA STRENGTH" dosage of vitamin B12 and charging more for them all the while knowing this representation is false and misleading since the Products provide no greater nutritional value of availability of B12 than Defendant's lower-dosed and lower-priced B12 counterparts.  Further, Defendant misrepresented and omitted material information about the true nature of the Products with the intent to defraud consumers into paying more money for the "EXTRA STRENGTH" Products even though they provide no more availability of vitamin B12 or nutritional value than the lower-dosed, lower-priced B12 counterparts.  Defendant's conduct deceived Plaintiff and California Subclass Members who purchased the Products in reliance on Defendant's claims, and is highly likely to deceive members of the consuming public because, as alleged above, the Products violate consumers' reasonable expectations regarding the Products.  Such a business practice lacks utility and functions only to maximize Defendant's profits at the expense of its customers.  The gravity of the harm to Plaintiff and other California Subclass Members, who lost money or property by paying for the Products, far outweighs the benefit to Defendant's conduct.

82.    Further, Defendant's fraudulent business practices will continue to mislead consumers because it will be impossible for consumers to know whether Defendant's Products are actually providing an "EXTRA STRENGTH" dosage of vitamin B12 compared to Defendant's lower-dosed and lower-priced B12 counterparts and will therefore be unable to assess how the Products compare to alternatives.  Accordingly, the risk of harm to Plaintiff, members of the California Subclass, and the consuming public, is ongoing.

***"Unlawful" Prong of the UCL***

83.    A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

84.     Defendant's business practices as alleged constitute violations of California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* (the "CLRA").  Specifically, Defendant has unlawfully marketed and advertised its Products in violation of Cal. Civ. Code §§ 1770(a)(5), 1770(a)(7), and 1770(a)(9), as detailed above.

85.     Defendant's business practices also constitute violations of California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et. seq.* (the "FAL"), as described above.

86.     Defendant's unfair, fraudulent, and unlawful business practices, as enumerated and explained above and below, were the direct and proximate cause of financial injury to Plaintiff and other members of the California Subclass.  Defendant has unjustly benefited as a result of its wrongful conduct.  Accordingly, Plaintiff and the California Subclass seek an order of this Court that includes, but is not limited to, requiring Defendant to: (a) provide restitution to Plaintiff and the California Subclass; (b) disgorge all revenues obtained as a result of its violations of the UCL; (c) and pay attorneys' fees and costs for Plaintiff and the California Subclass.

## COUNT IV
### Fraudulent Concealment or Omission
### (On Behalf of the Nationwide Class and California Subclass)

87.     Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this Complaint.

88.     Plaintiff brings this claim individually and on behalf of the Nationwide Class and California Subclass under California law.

89.     At all relevant times, Defendant was engaged in the business of designing, manufacturing, distributing, and selling the Products.

90.     Defendant, acting through its representatives or agents, delivered the Products to its own distributors and various other distribution channels and was party to the design, manufacture, and advertising processes, productions, and agreements.

91.     Defendant willfully, falsely, and knowingly omitted material facts and made partial representations regarding the quality and character of the Products as discussed throughout. Defendant was best situated to know the true composition of the Products.

92.     Rather than inform consumers of the truth regarding the Products, Defendant misrepresented the quality of the Products as discussed herein at the time of Plaintiff's and Class Members' purchases.

93.     Defendant made these material omissions and partial representations to boost or maintain sales of the Products.  The omitted information and partial representations were material to consumers because they played a significant role in the value of the Products purchased.

94.     Defendant had a duty to ensure the accuracy of the information regarding the Products because it was in exclusive knowledge of this information, as the manufacturer of the Products, and the information was contrary to the express representations and warranties Defendant made about the Products.  But it did not fulfill that duty.

95.     Defendant misrepresented material facts to pad and protect its profits, as it saw that profits and sales of the Products were essential for its continued growth and to maintain and grow its reputation as a premier manufacturer and seller of the Products.  Such benefits came at the expense of Plaintiff and Members of the Nationwide Class.

96.     Plaintiff and Members of the Nationwide Class were unaware of these material misrepresentations and omissions, and they would not have acted as they did had they known the truth.  Plaintiff and Class Members' actions were justified given Defendant's misrepresentations and omissions.  Defendant was in exclusive control of material facts, and such facts were not known to the public.

97.     Due to Defendant's misrepresentations and omissions, Plaintiff and Members of the Class sustained injury due to the purchase of Products that did not live up to its advertised representations.  Plaintiff and Members of the Class are entitled to recover full refunds for the Products they purchased due to Defendant's misrepresentations and omissions.

98.     Defendant's acts were done deliberately, with knowledge of the false and misleading nature of its omissions of fact and with intent to defraud consumers into purchasing the Products at a higher price, although the Products do not provide more vitamin B12 availability or more nutritional value than other B12 counterparts, and in reckless disregard of Plaintiff and Class Members' rights and well-being, and in part to enrich itself at the expense of consumers.

Defendant's acts were done to gain commercial advantage over competitors, and to drive consumers away from consideration of competing products. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future.

**COUNT V**
**Fraudulent Misrepresentation**
**(On Behalf of the Nationwide Class and California Subclass)**

99.     Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this Complaint.

100.    Plaintiff brings this claim individually and on behalf of the Nationwide Class and California Subclass under California law.

101.    Defendant falsely represented to Plaintiff and the Class that the Products were "EXTRA STRENGTH," when in fact, they provide no greater vitamin B12 availability or nutritional value than Defendant's lower-dosed and lower-priced B12 counterparts. Defendant deceived reasonable consumers into believing they are getting more B12 for their money, when they are in fact, not.

102.    Defendant intentionally, knowingly, and recklessly made these misrepresentations to induce Plaintiff and the Class to purchase the Products.

103.    Defendant knew or should have known that its representations about the Products were false because the Products are not "EXTRA STRENGTH," as discussed throughout, since Defendant was best situated to know the true composition and utility of the Products. Defendant thus knowingly allowed its packaging, labels, advertisements, promotional materials, and websites to intentionally mislead consumers such as Plaintiff and the Class.

104.    Defendant made these misrepresentations of fact with the intent to induce Plaintiff and Class Members to purchase the Products at a higher price even though they did not provide consumers with more vitamin B12 availability or nutritional benefit.

105.    Plaintiff and the Class did in fact rely on these misrepresentations and purchased the Products to their detriment. Given the deceptive manner in which Defendant advertised, marketed,

represented, and otherwise promoted the Products, Plaintiff's and Class Members' reliance on Defendant's misrepresentations was justifiable.

106.    As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they would not have purchased the Products at all had they known the Products do not conform to Defendant's advertising and marketing.

107.    Plaintiff and the Class seek actual damages, attorneys' fees, costs, and other such relief the Court deems proper.

**COUNT VI**
**Negligent Misrepresentation**
**(On Behalf of the Nationwide Class and California Subclass)**

108.    Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this Complaint.

109.    Plaintiff brings this claim individually and on behalf of the Nationwide Class under California law.

110.    Defendant had a duty to Plaintiff and the Classes to exercise reasonable and ordinary care in the developing, testing, manufacturing, marketing, detailing, distribution, and sale of the Product.

111.    Defendant breached its duty to Plaintiff and Class Members by developing, testing, manufacturing, marketing, detailing, distributing, and selling the Products to Plaintiff and the Class that did not have the qualities, characteristics, and suitability for use as advertised by Defendant and by failing to promptly remove the Products from the marketplace or take other appropriate remedial action.

112.    Defendant—as party to the manufacture, production, and quality assurance testing— knew or should have known that the qualities and characteristics of the Products were not as advertised, marketed, detailed, or otherwise represented or suitable for its intended use and were otherwise not as warranted and represented by Defendant.  Specifically, Defendant knew or should have known that the Products were not actually "EXTRA STRENGTH," as represented.

113.    As a direct and proximate result of Defendant's conduct, Plaintiff and members of the Classes have suffered actual damages in that they would not have purchased the Products at all had they known that the Products do not provide the represented "EXTRA STRENGTH" dose because they provide no greater nutritional value than Defendant's lower-dosed and lower-priced B12 counterparts, contrary the Products' labeling, packaging, advertising, and statements.

114.    Plaintiff and the Classes seek actual damages, attorneys' fees, costs, and any other just and proper relief available.

**COUNT VII**
**Breach of Express Warranty**
**(On Behalf of the Nationwide Class and California Subclass)**

115.    Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this Complaint.

116.    Plaintiff brings this claim individually and on behalf of the Nationwide Class under California law.

117.    Plaintiff and Class Members formed a contract with Defendant at the time Plaintiff and Class Members purchased the Products.

118.    The terms of the contract include the promises and affirmations of fact made by Defendant on the Products' packaging and through marketing and advertising, as described above.

119.    This labeling, marketing, and advertising constituted express warranties and became part of the basis of the bargain and are part of the standardized contract between Defendant and Plaintiff and Class Members.

120.    As set forth above, Defendant purports, through advertising, labeling, marketing, and packaging, to create an express warranty that the Products are as represented.

121.    Plaintiff and Class Members performed all conditions precedent to Defendant's liability under this contract when they purchased the Products.

122.    Defendant breached express warranties about the Products and their qualities because, despite Defendant's warranties, the Products are not "EXTRA STRENGTH" because they

do not provide greater levels of B12 than Defendant's lower-dosed and lower-priced B12 vitamins. Thus, the Products did not conform to Defendant's affirmations and promises described above.

123.    Plaintiff and each Class Member would not have purchased the Products had they known their true nature.

124.    As a result of Defendant's breach of its express warranties, Plaintiff and each Class Member suffered, and continue to suffer, financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorney's fees, as allowed by law.

125.    On January 22, 2025, prior to the filing of this Complaint, Plaintiff's counsel sent Defendant a notice apprising Defendant of its breach of express warranties. That letter complied in all respects with U.C.C. §§ 2-313, 2-314, and 2607.

## JURY TRIAL DEMANDED

WHERFORE, Plaintiff, individually and on behalf of all others similarly situated, seek Judgment against Defendant, as follows:

(a)    For an order certifying the Classes under Fed. R. Civ. P. 23 and naming Plaintiff as representative of the Classes and naming Plaintiff's attorneys as Class Counsel;

(b)    For an order declaring that Defendant's conduct violates the statutes and common law referenced herein;

(c)    For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

(d)    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e)    For an order of restitution and all other forms of equitable monetary relief;

(f)    For injunctive relief as pleaded or as the Court may deem proper;

(g)    For an order awarding Plaintiff and the Classes their reasonable attorneys' fees, expenses, and costs of suit.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Dated:  April 22, 2025

**BURSOR & FISHER, P.A**.

By:     /s/ *L. Timothy Fisher*
            L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Ines Diaz Villafana (State Bar No. 354099)
Karen B. Valenzuela (State Bar No. 357231)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
            idiaz@bursor.com
            kvalenzuela@bursor.com

*Attorneys for Plaintiff*

1

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

2

I, L. Timothy Fisher, declare as follows:

3

1.       I am an attorney at law licensed to practice in the State of California and a member

4

of the bar of this Court.  I am a partner at Bursor & Fisher, P.A., counsel of record for Plaintiff

5

Noguez in this action.  Ms. Noguez  is a resident of San Francisco, California.  I have personal

6

knowledge of the facts set forth in this declaration and, if called as a witness, I could and would

7

competently testify thereto under oath.

8

1.       The Complaint filed in this action is filed in the proper place for trial under Civil

9

Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred

10

in the Northern District of California.

11

I declare under the penalty of perjury under the laws of the State of California and the

12

United States that the foregoing is true and correct and that this declaration was executed at Walnut

13

Creek, California, this 22nd Day of April 2025.

14

15

_____*/s/ L. Timothy Fisher*_____
                L. Timothy Fisher

16

17

18

19

20

21

22

23

24

25

26

27

28